At this term John R. Williamson was indicted *Page 156 
and tried for the crime of larceny in stealing a one hundred dollar bank note of the goods and chattels of Richard Mitchell.
Mitchell testified that on Tuesday of the week in which he lost the note, lie came from Smyrna to Dover and received from the Farmers' Bank here on a check to his order for the sum of two hundred and sixty-two dollars and a few cents, (the number of which he mentioned,) two bank notes of the denomination of $100 each, another bank note of the denomination of $50, another bank note of the denomination of $10, another bank note of the denomination of $2, and the few cents mentioned in fractional currency and nickel pennies, and folded the two one hundred and fifty and ten dollar bank notes together and placed them by themselves in his pocket-book, but put the two dollar bank note in another apartment of it, and the fractional notes and pennies with some other change less than a dollar which he before had in his pocket, and returned the same day to Smyrna; and that he did not receive any other money whatever from that time until the following Saturday when he missed one of the notes of the denomination of $100 from his pocket-book, but had in the meantime paid a small bill of not more than one dollar out of the $2 bank note, and had used the balance of it and the fractional currency before mentioned in paying some small expenses incurred in the meanwhile. That being indebted to the prisoner in the sum of $2, he stepped into his store in Smyrna on Thursday evening following his return from Dover, after the lamps had been lighted in it, and said to him that he would then pay him the $2 bill he owed him, and took from his pocket-book what he intended and supposed to be the ten dollar bank note folded with the other three bank notes as before mentioned, and handed it to the prisoner who took it and looked at it in a way which led him to apologize for offering a ten dollar note in payment of so small a bill, and that he then went to his money drawer and *Page 157 
opening and looking into it and still retaining the note in his hand, said he could not make the change, but he would go into the store of his neighbor adjoining his and get the note changed, and immediately went out of his store and soon afterwards came back into it and handed him eight dollars in bank notes as his change for it, which he placed in the same apartment of his pocket book with the other three bank notes, and from which he had taken the bank note he handed to him; but he had no occasion to look at it or to use any of it until the following Saturday, when to his great surprise he found on again opening that apartment of his pocket-book, it contained but one bank note of the denomination of $100, one of the denomination of $50, one of the denomination of $10, and the $8 in bank notes which the prisoner had given him in change as before stated, and that instead of the $10 note being gone from it, as lie supposed and confidently expected to find, that note was still in it, and one of the two one hundred dollar notes was gone from it. It immediately occurred to his mind how it had happened, and he went to the store of the prisoner and stated to him that he had by mistake on the Thursday preceding handed him a one hundred dollar, instead of a ten dollar bank note, in paying his bill of two dollars that evening, and stated to him his reasons as already mentioned for the confidence with which he believed and alleged it. But the prisoner at once replied that the note which he received from him on that occasion was a ten dollar note, and that lie gave him eight dollars, the correct amount in exchange for it, and that then and ever since he had persistently denied all knowledge of any one hundred dollar note in connection with the transaction.
The person from whom the prisoner said he procured the change that evening, was also examined as a witness for the State, but he could not remember whether he changed a note for the prisoner, or loaned him the amount of money he required for the occasion, as was *Page 158 
sometimes done by him under such circumstances; but he remembered that he did one or the other at his request. He positively denied, however, that he had any knowledge whatever of the hundred dollar note in question, or that he saw any one hundred dollar note in the hands of the prisoner that evening.
No testimony was produced on the part of the prisoner, except as to his good character.
The prisoner, John R. Williamson, stood indicted for the crime of larceny, and which was alleged in the indictment to consist of his feloniously stealing, taking and carrying away a bank note of the denomination and value of one hundred dollars, the property of Richard Mitchell, with the intent to appropriate the same to his own use, without his consent, as the rightful owner of it. As the prosecuting witness in the case he had fully and particularly detailed all the facts and circumstances attending the first receipt of it by him with four other bank notes at the Farmers' Bank in Dover, how much in all he received, the denomination of the several bank notes, two of them being one hundred dollar notes, one of them a fifty dollar note, one of them a ten dollar note, and one of them a two dollar bank note, how he folded the four notes first mentioned together and placed them by themselves in one of the pockets, or apartments of his pocket book on the Tuesday he received them at the bank, and that he had no occasion, according to his statement, to examine them, or to use either of them, until the following Thursday evening when he went to *Page 162 
the store of the prisoner after the lamps were lighted in it, to pay him a bill of two dollars which he owed him, and having in the mean time spent a portion of the two dollar note which he had received with them from the bank, but which had never been placed with them in his pocket book, and not having sufficient change about him to pay it, he told him he had called to pay it, and then took out of his pocket book, and from the apartment of it in which the four notes folded together had been kept in the mean while separate and apart and unexamined by him, what he intended and supposed to be the one ten dollar note which was folded with the others, and handed it to the prisoner who took it, held it in his hand and looked at it long enough to lead him to apologize for handing him a ten dollar note in payment of so small a bill; and that the prisoner then took it to his money drawer and opening and looking into it, said to him that he could not make the change, but he would go to the store of his adjoining neighbor and get it changed, and that he stepped out of his store, and in a few minutes returned and handed him eight dollars in several bank notes, (the number and denominations of which he stated) which he then placed in the same apartment of his pocket book from which he had taken the ten dollar note, as he supposed, which he handed to the prisoner, with the remaining three notes which he had replaced in it after handing the one he had taken from it to the prisoner. That he then left the prisoner's store, and again had no occasion to use or examine any of the notes in that apartment of his pocket book until the following Saturday, when to his surprise he discovered that the ten dollar note was still in it, but one of the two one hundred dollar notes was missing, and with the one hundred dollar note, the fifty dollar note and the ten dollar note still remaining in it, lie found the eight dollars in small notes which he had received in change from the prisoner, also in it. And he had stated with great precision and minuteness how he was able, as soon as he discovered it, to account *Page 163 
for the loss of the missing one hundred dollar note, and the fact that the ten dollar note was still there instead of it, on the ground that he had on the Thursday evening before that, handed the missing one hundred dollar note by mistake to the prisoner, instead of the ten dollar note, as he intended and supposed he had done up to that time. That he immediately called on the prisoner and informed him of the loss and the mistake, but he in reply to it alleged that it was a ten dollar note he had handed to him on that occasion, and that he had given him the right change for it, and denied that he saw, or had any knowledge of a one hundred dollar note in connection with the payment of his bill that evening. The testimony of the other witness for the State who furnished the change or the money applied for by the prisoner, saw no hundred dollar note in his hands on that occasion, and of that he was positively certain in his recollection.
But the jury were to judge of the credibility of the prosecuting witness and the weight of his testimony, and how far they were to rely on the accuracy of his recollection and the correctness of his statement in the various particulars detailed by him in relation to the matter; and the great question of fact presented in the case, as well as every question of fact involved in it, the jury alone were to consider and determine, when he had stated what was the law applicable to them. And it was their duty to say to them that if they were satisfied from the evidence beyond a reasonable doubt, that the bank note handed by the prosecuting witness to the prisoner that evening in payment of the bill or account of two dollars due him, was a bank note of the denomination of one hundred dollars, handed to him under a misapprehension and mistake on the part of Mitchell that it was a bank note of the denomination of ten dollars, and the prisoner discovered and knew that it was a one hundred dollar note, and not a ten dollar note, when he took it and gave him eight dollars in change for it, as for a ten dollar note, *Page 164 
and designedly and fraudulently concealed his knowledge of Mitchell's mistake in handing it to him for a ten dollar note from him, the prisoner was guilty of a felonious taking of it in law, and if he afterwards concealed it and appropriated it to his own use without the consent of Mitchell, it constituted a felonious taking and carrying away of it with the intent to appropriate it to his own use without the consent of Mitchell, and the crime of larceny in law. If, however, the jury should not be satisfied from the evidence beyond a reasonable doubt that such was the case, they should acquit the prisoner, for he would be entitled to the benefit of any reasonable doubt they might have that such were the facts of the case; and should they entertain such a doubt, the proof of his good character should determine that doubt and the question of his guilt or innocence of the crime charged against him in his favor.
 Verdict — Guilty.